UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TRAYVAUGHAN P., | ) | 1:08-cv-01774-SMS |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER DENYING |
| v. | ) | PLAINTIFF'S SOCIAL SECURITY |
| | ) | COMPLAINT (DOC. 1) |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | ORDER DIRECTING THE ENTRY OF |
| SECURITY, | ) | JUDGMENT FOR DEFENDANT MICHAEL J. |
| | ) | ASTRUE, COMMISSIONER OF SOCIAL |
| Defendant. | ) | SECURITY, AND AGAINST PLAINTIFF |
| | ) | Trayvaughan P. |
| | ) | |

Plaintiff is a minor proceeding through his guardian ad litem, Nicole P., in forma pauperis and with counsel with an action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying an application filed with a protective filing date of August 30, 2005, on behalf of Plaintiff, for Supplemental Security Income (SSI) benefits in which Plaintiff had claimed to have been disabled due to attention deficit hyperactivity disorder (ADHD) and asthma. (A.R. 14, 75-78.) The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1), and pursuant to the order of Judge Lawrence J. O'Neill filed December 8, 2008, the matter has been assigned

to the Magistrate Judge to conduct all further proceedings in this case, including entry of final judgment.

The decision under review is that of Social Security Administration (SSA) Administrative Law Judge (ALJ) James P. Berry, dated April 25, 2008 (A.R. 14-20), rendered after a video-conference hearing held February 20, 2008, at which Plaintiff and his mother appeared and testified, all with the assistance of counsel. (A.R. 14, 413-30.) The Appeals Council denied Plaintiff's request for review on August 19, 2008 (A.R. 5-7), and thereafter Plaintiff filed his complaint in this Court on November 14, 2008. Briefing commenced on April 20, 2009, and was completed with the filing of Plaintiff's reply on July 8, 2009. The matter has been submitted without oral argument to the undersigned Magistrate Judge.

I. Standard and Scope of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion; it may

not simply isolate a portion of evidence that supports the decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the determination of the Commissioner as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, and not the Court's, to resolve conflicts in the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th Cir. 1975).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must review the whole record and uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. See, Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If the Court concludes that the ALJ did not use the proper legal standard, the matter will be remanded to permit application of the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th Cir. 1987).

## II. Entitlement to SSI as a Child

### A. Legal Standards

#### 1. Disability Analysis

With respect to SSI, an individual under the age of eighteen shall be considered disabled if that individual has a medically

3

determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). To determine disability for children, the analysis requires determining 1) if the child is performing substantial gainful activity; 2) if not, then whether the child has an impairment or combination thereof that is severe; 3) if so, then whether an impairment or combination thereof meets, medically equals, or functionally equals a listed impairment and is of sufficient duration. 20 C.F.R. § 416.924(a).

### 2. Analysis of Functionality

In evaluating functioning, the agency considers information from medical and non-medical sources, and it evaluates any factors that are relevant to how the claimant functions. 20 C.F.R. § 416.924a(b). The effects of medications are considered. § 416.924a(b)(9). A claimant's functioning is compared to the typical functioning of children the claimant's age who do not have impairments. § 416.926a(f). The broad areas of functioning, or domains, considered include acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for oneself, and health and physical well-being. § 416.926a(b)(1).

An impairment causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment in the listings, or if it functionally equals the listing. 20 C.F.R. § 416.924(d). Listing level severity generally means the level of severity described in

4

20 C.F.R. § 416.926a(a), that is, "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain. § 416.925(b)(2)(ii). A limitation in a domain is marked, which is greater than moderate and less than extreme, if the impairment interferes seriously with one's ability independently to initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e). A limitation is extreme if the impairment interferes very seriously with the claimant's ability independently to initiate, sustain, or complete activities, and which is more than "marked", and is the rating given to the worst limitations, although it does not necessarily mean a total lack or loss of ability to function. Id. Activities are everything one does at home, at school, and in the community. § 416.926a.

   In assessing functionality, the SSA considers the whole child and the inter-relationship of multiple impairments and limitations on all activities. Soc. Sec. Ruling 09-1p. To determine whether there is a "marked" or an "extreme" limitation in a domain, consideration is given to how many of the child's activities in the domain are limited, the importance of the limited activities to the child's age-appropriate functioning, the frequency of the activities and of limitation on the activities, the location and settings in which the limitations occur, and the factors involved in the limited activities, such as support from people, medications, structure in supportive settings, etc. Soc. Sec. Ruling 09-1p, Pt. III(B). The effects of an impairment longitudinally is considered; the judgment about whether there is a "marked" or "extreme" limitation of a domain depends on the importance and frequency of the limited activities

5

and the relative weight of the other pertinent considerations. Id.

### 3. Domain of Interacting with and Relating to Others

With respect to the domain of interacting and relating with others, the SSA considers how well one interacts (initiates and responds to exchanges with others for practical or social purposes), relates to (forms and sustains over time intimate relationships with family, friends, and neighbors and classmates), and responds to others. Cooperation with others, compliance with rules, responses to criticism, and respect and taking care of the possessions of others are considered. Responsiveness requires response to others' emotional and behavioral cues, feelings, and points of view, as well as following social rules of interaction and conversation and generally responding to others appropriately and meaningfully. 20 C.F.R. § 416.926a(i). Activities involved in this domain may occur at home and/or at school, such as playing, learning, and working cooperatively with other children, joining voluntarily in activities with other children, and responding to persons in authority. Id.

### B. The ALJ's Findings

The ALJ found that Plaintiff, who was born in April 1994 and was fourteen years old at the time of the decision, had been evaluated as an adolescent since the attainment of age thirteen, and had not engaged in substantial gainful activity. (A.R. 15.) Plaintiff had severe impairments of attention deficit hyperactivity disorder (ADHD) and mild asthma, which did not meet

6

or medically equal a listed impairment, including section 112.11, pertaining to ADHD, or 103.03, pertaining to asthma. (A.R. 16.)[1] Further, Plaintiff did not have an impairment of combination thereof that functionally equaled a listing. (A.R. 16.) The ALJ concluded that even with medication, Plaintiff continued to experience marked limitations in the domain of attending to and completing tasks. (A.R. 18-19.) However, with respect to the domain of interacting with and relating to others, the ALJ concluded:

> This domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others (20 CFR 416.926a(I)). The claimant has less than marked limitation in interacting and relating to others. The claimant has a significant school disciplinary record, but as yet has not been expelled or sent to a more heavily supervised educational setting. Given the lack of consistent counseling and medication for the claimant's ADHD, this disciplinary history does not establish marked or extreme limitations in the domain of interacting with others.

(A.R. 19.)

Because Plaintiff was found to have no limitations in moving and manipulating objects, and less than marked limitations in acquiring and using information, caring for himself, and health and physical well-being, the ALJ concluded that because Plaintiff did not have an impairment of combination thereof that resulted in either marked limitations in two domains of functioning or

---

[1] To meet the level of severity of the Listing for attention deficit hyperactivity disorder (ADHD) required in an application for child's supplemental security income disability benefits, there must be (1) medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity, (2) resulting in a marked impairment in at least two of the following: cognitive/communicative function, social functioning, personal functioning, or maintaining concentration, persistence and pace. 20 C.F.R. Part 404, Subpart P, App. 1, § 112.11.

7

extreme limitation in one domain of functioning, Plaintiff had not been disabled since August 30, 2005, the date the application was filed. (A.R. 20.)

### C. Sufficiency of the Evidence to Support the ALJ's Finding concerning Plaintiff's Ability to Interact with and Relate to Others

Plaintiff's sole contention is that the record does not support the ALJ's finding that Plaintiff's limitations in the domain of interacting with and relating to others were less than marked.

#### 1. Background

The ALJ detailed the medical evidence from treating, consulting examining, and reviewing sources; the testimony of Plaintiff and his mother at the hearing; and information submitted from a past teacher of Plaintiff and school records reflecting Plaintiff's discipline. The ALJ weighed the opinion evidence. (A.R. 16-18.)

With respect to the longitudinal medical record, in 2001, there was some assessment of Plaintiff, but after Plaintiff's mother's multiple failures to appear with Plaintiff for appointments, the file was closed. (A.R. 331-96.)

In October 2002, Plaintiff was referred for an evaluation and possible treatment by his principal, teacher, and parent, who reported that Plaintiff was cruel to others, lost his temper and argued, and had problems with attention and concentration. (A.R. 329.) Program therapists and interns assessed Plaintiff, who was eight years old, and diagnosed ADHD. (A.R. 322-26.) A consulting, examining psychologist, Michael G. Musacco, Ph.D., performed a psychological evaluation of Plaintiff on November 26, 2002.

8

Plaintiff reported that he had never been medicated. (A.R. 410.) After administering tests, Dr. Musacco diagnosed ADHD combined type. Plaintiff had low average intelligence. (A.R. 409-11.)

The only apparent treatment that Plaintiff received was intermittent counseling at the Weill Memorial Child Clinic, part of the Kern County Mental Health Department, from January to July 2002, October 2002 through January 2003, and July through August 2005. (A.R. 280-396, 314, 304-07.)

In July 2005, when Plaintiff was eleven years old and in sixth grade, Plaintiff's school requested that Plaintiff be tested and medicated for ADHD; the school could not control him. (A.R. 302.) A mental health worker examined Plaintiff in July 2005, noting issues with school achievement and suspension and assaultive behavior, impaired relationships with others, and a GAF of 35. (A.R. 296-99.) The worker noted that although Plaintiff had ADHD combined type, his prognosis was excellent with treatment. (A.R. 299.)

On August 25, 2005, Plaintiff's pediatrician prescribed Concerta, a medication for ADHD. (A.R. 284.) In January 2006, the pediatrician noted that Plaintiff was doing well on Concerta. (A.R. 282.)

On February 6, 2006, licensed psychologist Kimball Hawkins, Ph.D., performed a consultative psychological evaluation of Plaintiff; diagnosed ADHD, conduct disorder, rule out mood disorder, low average verbal comprehension, and sub-average perceptual reasoning; and recommended that Plaintiff receive psychiatric treatment, behavioral intervention services, and tutoring. (A.R. 278-81.)

9

On February 7, 2006, and February 5, 2007, state agency medical consultants Marina C. Vea, M.D., a psychiatrist, and Anne M. Khong, M.D., opined that Plaintiff had no limitation in one domain and less than marked limitations in all other domains, including interacting with and relating to others. (A.R. 262, 257-63.)

On July 5, 2006, Harvey Biala, M.D., a state agency psychiatrist, opined that Plaintiff's ADHD did not meet, medically equal, or functionally equal a listed impairment; Plaintiff had no limitation in one domain and less than marked limitation in all other domains, including interacting and relating with others. (A.R. 264, 266-67.)

School records of discipline from 2003 through 2008 reflect that in 2003, Plaintiff suffered detention or lesser sanctions less than ten times for misbehavior such as disrespect, disturbance, bad language, and hitting or punching students or pulling a student's ear. Plaintiff was sent home once for kicking and flicking water and was suspended for hitting. (A.R. 166-69.)

In 2004, there were fourteen instances of lesser discipline, including warnings, counseling, loss of privileges, and detention, for four instances of defiance or disrespect, one threat to a peer, and two instances of foul language. There were five suspensions for a total of fourteen days for assaultive conduct (choking, mutual fighting, hitting, and one aggravated assault involving mooning peers and grabbing and twisting female breasts), and three suspensions for a total of four days for disrespectful and/or disruptive conduct towards teachers. (A.R. 100-05.)

10

In 2005, there were thirteen disciplinary events, including lesser sanctions on five occasions for various misbehavior, including disruptive conduct in class, making threats, throwing a crayon at a peer who persisted in making noise, and kicking a peer off campus. There were five suspensions for a total of nine days for assaultive conduct (pushing, shoving, shocking students with a shock pen, punching a peer, and two instances of fighting) as well as two suspensions for disrespectful conduct or disturbance, for a total of two days, and two additional losses of the remainder of a school day after being sent home. (A.R. 96-100.)

In 2006, there were twenty-three disciplinary events, although the nature of the misconduct changed. There were only two suspensions for a total of three days, and one instance of being sent home, for assaultive conduct (shouting match during basketball erupted into a fight, chased and hit a peer, and flipped or shot a rubber band towards a peer and/or aide). There were four suspensions for a total of four days for defiance, disruption, inappropriate conduct, and threats; there was single suspension for five days for theft of a bicycle; and there were five instances of defiance or disruption resulting in Plaintiff's being sent home for the remainder of the school day. (A.R. 84-95.)

In 2007, there were eight instances of discipline. There were two suspensions for a total of five days for assaultive conduct (pushing a student over who had leaned in to Plaintiff and slapping a student who splashed water on Plaintiff), one suspension for two days for disrespect and noncompliance with

detention, and one instance of being sent home for disobeying an order to turn around. Less severe sanctions were imposed four times for having a cell phone at school, being in the wrong area, refusing to do an assignment, and disruption. (A.R. 81-84.)

In January 2008, Plaintiff was suspended one day for talking back to his teacher and refusing to do as he was told after having been to the office multiple times already that week. (A.R. 80.)

Plaintiff's mother reported on Plaintiff's functioning and testified at the hearing. She reported in August 2005 that Plaintiff constantly got in to fights, was out of control with anger, and did not get along with others. (A.R. 185.) Plaintiff angered if he felt that he was not getting his point across. There were no limitations on Plaintiff's ability to learn. Although Plaintiff had friends his own age and could make new friends, he did not generally get along with adults and teachers; did not play team sports because he did not like to lose and was a poor sport, and although he did his homework, he would not turn it in, and she had to "stay on him" to finish his chores. (A.R. 182-91.) She reported in February 2007 that Plaintiff was completely kicked out of school and then went one-half day; the Concerta slowed Plaintiff down a little, so she had to be "on" him about everything, and he was very hyper. He shot out a neighbor's window with a bee-bee gun. (A.R. 117-24.)

Plaintiff's mother testified about Plaintiff's problems in school and his treatment, which she characterized as four or five years at the Weill clinic that ended in 2006 when Plaintiff made progress and was terminated from the program; Plaintiff had

12

reverted, and she wanted Plaintiff back in counseling because counseling had caused him to do better. She was waiting for an opening at the clinic. Plaintiff was in regular classes at school and received C's, Ds, and F's; he had been suspended from school for the day and for two days for not obeying orders. (A.R. 416-17.) Plaintiff had once stolen a pair of shoes from a store, but the police called Plaintiff's mother, and she was allowed to pay for the shoes without Plaintiff's becoming involved with the court system. (A.R. 421.)

Plaintiff testified that he was in the eighth grade and was doing "okay" in school. He identified his problems as talking in class and getting out of his seat. He was passing generally and had a 2.3 grade average for the last grade period. He liked to play football, basketball, and video games. (A.R. 423-25.)

The record reflected that Plaintiff did not take his medication every day or even on every school day. Plaintiff admitted that he himself got the medication to take and that he did not take his medication every day; he did not know why, and he had not told his mother that he did not take it. (A.R. 423-24.) Plaintiff's mother admitted that Plaintiff did not take the Concerta on the weekend; even she saw a slight difference in Plaintiff when he was medicated, but she maintained that the doctor had left it up to her as to whether or not to medicate Plaintiff every day. (A.R. 426-27.) A disciplinary note from the school made in February 2006 reflected that Plaintiff continued to make noises, and the reporter stated that Plaintiff explained that he had forgotten his medications. (A.R. 94.) During Dr. Hawkins's examination of Plaintiff in February 2006, Plaintiff

complained that the tests he was given were boring and looked disinterested; then Plaintiff made errors. Plaintiff's mother said that Plaintiff's medication was wearing off. (A.R. 279.) The longitudinal record revealed that Plaintiff's aunt, who during Plaintiff's mother's incarceration in 2002 had accompanied Plaintiff to Dr. Musacco's office for his examination, indicated that Plaintiff's mother had rejected medication as a treatment for Plaintiff's ADHD. (A.R. 410.)

### 2. Analysis

Substantial evidence in the form of Plaintiff's and his mother's testimony supported the ALJ's conclusion that Plaintiff was not wholly compliant with his ADHD medication. (A.R. 16.) The medical record and Plaintiff's mother's own reports constituted a substantial basis for a reasonable inference that the medication improved Plaintiff's condition and behavior and that compliance with medication would have improved Plaintiff's functioning significantly. In discounting Plaintiff's mother's assertions concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ expressly stated:

> There is no evidence that the claimant has been in counseling since August 2005. Although [Mrs. P.] testified that she could see little difference in the claimant's behavior during school days, when supposedly took Concerta, and on the weekends, when he did not take the medication, his testimony indicates that he is not taking Concerta consistently during the school week. The absence of consistent medication could reasonably be expected to create some of the claimant's ongoing behavioral and attention deficit problems and explain why there is little change is(sic) his behavior. I note that the claimant is able to maintain sufficient attention to play video games and football; that he is not is (sic) special education; has not been held back in school; and does not have an individualized education plan (IEP). These factors suggest that he does not

14

> have marked limitations in acquiring and using
> information, in spite of his uneven performance
> on IQ testing at the February 2006 consultative
> psychological evaluation.

(A.R. 18.)

Although Plaintiff had a disciplinary record at school, the longitudinal record reflects a lessening of Plaintiff's assaultive behaviors and a continuance of problems associated with maintaining concentration and attention and/or focus, demonstrated by Plaintiff's disruptive, distracting misbehavior. The ALJ's reasoning concerning the independent indicators of Plaintiff's functionality, such as Plaintiff's grades, his not being in a special education setting, and his ability to continue in a mainstream setting, as distinct from a more heavily supervised educational setting, was supported by substantial evidence in the record and was specific, legitimate, and even of clear and convincing force. The ALJ's reasoning concerning the effect of consistent medication and counseling on the extent of the limitations suffered by Plaintiff was supported by substantial evidence and was likewise specific, legitimate, and even clear and convincing in force. Generally, an impairment that can reasonably be controlled by medication cannot serve as a basis for finding a disability. Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983).

There is no doubt that Plaintiff had a disciplinary history. However, considering Plaintiff's ability to function in the educational context in which his impairment manifested limitations, and in light of the woeful absence of treatment and admitted lack of consistent medication, the record was such that

15

it was up to the ALJ to engage in the initial weighing of the evidence, assessment of the importance and frequency of the limitations and activities, consideration of the effect of medication and treatment and the lack thereof, and evaluation of the relative weight of other conditions and factors. In so doing, the ALJ in the instant case proceeded according to correct legal standards and made conclusions supported by the weight of substantial evidence.

In <u>Collins ex rel. Williams v. Barnhart</u>, 335 F.3d 726, 730 (8th Cir. 2003), it was held that substantial evidence supported the ALJ's finding that a child did not suffer limitations that markedly impaired his ability to function socially as a result of his ADHD where when the child took his medication, he was able to hold conversations with others, tell jokes, explain his actions, and interact with his teachers. Even his worst behavior arguably did not demonstrate that his social development was markedly impaired: he had never had any trouble with the police; despite discipline problems, he had not been removed from normal classes or expelled; and he had never threatened extreme violence. The Court concluded that significant evidence in the record supported a conclusion that the claimant's behavior had been disruptive, but not incapacitating, and that the claimant did not suffer limitations that markedly impaired his ability to function socially.

Further, a failure to take medications consistently can explain a failure of functioning and warrant a conclusion that the claimant is not disabled. <u>See</u>, <u>Rushing ex rel. Rushing v. Massanari</u>, 159 F.Supp.2d 1315, 1319-20 (D.Kan. 2001).

1   The Court concludes that considering the whole record in
2 this case, substantial evidence supports the ALJ's conclusion
3 that Plaintiff had less than marked limitations in the domain of
4 interacting with and relating to others.

5   Plaintiff complains that the ALJ did not mention the
6 examples that are set forth in the regulations as illustrations.
7 However, this is not determinative. The pertinent regulation
8 expressly states that the examples are not all-inclusive, and "we
9 will not require our adjudicators to develop evidence about each
10 specific example." 20 C.F.R. § 416.926a(f)(3).

11   The Court rejects Plaintiff's assertion that the fact that
12 the ALJ relied on Plaintiff's overall progress in school is
13 tantamount to requiring an expulsion or transfer to a more
14 supervised educational setting in order to find a claimant
15 disabled.

16   Consideration of the "straight-jacket that the IDEA laces on
17 the school district in addressing and disciplining a Trayvaughan"
18 (Pltf.'s Brief p. 9) or of the IDEA's asserted requirement that
19 the school provide the least restrictive atmosphere possible, is
20 not appropriate; the Court rejects the assertion that the ALJ
21 "erected an impossible standards that would require the school
22 district to violate the IDEA in order for a child to receive
23 assistance under the Social Security Act." (Pltf.'s Brief p. 9.)
24 The Court has confined its review to the record before it and the
25 pertinent legal principles.

26   IV. <u>Disposition</u>

27   Based on the foregoing, the Court concludes that the ALJ's
28 decision was supported by substantial evidence in the record as a

17


whole and was based on the application of correct legal standards.

Accordingly, the Court AFFIRMS the administrative decision of the Defendant Commissioner of Social Security and DENIES Plaintiff's Social Security complaint.

The Clerk of the Court IS DIRECTED to enter judgment for Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Trayvaughan P.

IT IS SO ORDERED.

**Dated:   August 14, 2009**           /s/ Sandra M. Snyder
                                    UNITED STATES MAGISTRATE JUDGE